# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>AGRIPROCESSORS, INC., SHOLOM RUBASHKIN, BRENT BEEBE, HOSAM AMARA and ZEEV LEVI,<br><br>    Defendants. | No. 08-CR-1324-LRR<br><br>**ORDER** |

## *I. INTRODUCTION*

The matter before the court is Defendant Sholom Rubashkin's "Second Renewed Motion for Change of Venue" ("Motion") (docket no. 624).

## *II. RELEVANT PRIOR PROCEEDINGS*

On January 29, 2009, Defendant Rubashkin filed his first "Motion for a Change of Venue" ("First Motion") (docket no. 209). In the First Motion, Defendant Rubashkin asked the court to transfer venue of the instant action to Minneapolis, Minnesota or Chicago, Illinois. Defendant Rubashkin contended that, because of extensive, inflammatory and adverse pretrial publicity, he would be unable to receive a fair trial in the Northern District of Iowa.

On March 18, 2009, the court denied the First Motion with leave to refile. Order (docket no. 398). The court also directed the parties to "work together to craft a questionnaire to be distributed to prospective jurors" in order to "gather information about each potential juror's exposure to adverse pretrial publicity[.]" *Id.* at 8.

On June 1, 2009, Defendant Rubashkin filed a "Renewed Motion for Change of Venue") ("Second Motion") (docket no. 496). On June 10, 2009, the court adopted the

jury questionnaire that the parties proposed (docket no. 506-3). Subsequently, the Clerk of Court mailed the juror questionnaires to a pool of jurors in the Northern District of Iowa. On June 18, 2009, the court denied the Second Motion with leave to refile. Order (docket no. 513).

On August 5, 2009, the court held a hearing and asked Defendant Rubashkin if, after reviewing the completed juror questionnaires, he intended to renew his request to transfer venue out of the Northern District of Iowa. Defendant Rubashkin indicated that he intended to do so. Accordingly, the court directed Defendant Rubashkin to file the instant Motion by August 20, 2009.

On August 20, 2009, Defendant Rubashkin filed the instant Motion. As of that date, the Clerk of Court had released the vast majority of the completed juror questionnaires to the parties. On August 21, 2009, Defendant Agriprocessors, Inc., filed a Joinder (docket no. 627) to the Motion. On August 26, 2009, the government filed a Resistance (docket no. 640).

On August 31, 2009, the court held a hearing ("Hearing") on the Motion. Attorneys Guy R. Gook, F. Montgomery Brown and Adam Zenor represented Defendant Rubashkin. Attorney James A. Clarity, III, represented Defendant Agriprocessors. Attorney Raphael M. Scheetz represented Defendant Brent Beebe. Assistant United States Attorneys C.J. Williams, Matthew Cole and Peter E. Deegan, Jr., represented the government. On August 31, 2009, Defendant Rubashkin filed a Reply (docket no. 653).

The court finds the Motion is fully submitted and ready for decision.

### III. ANALYSIS

#### A. Parties' Positions

Defendants Rubashkin and Agriprocessors argue that the completed juror questionnaires make it "more clear than ever [that] this case should be transferred to a different venue." Brief in Support of Motion (docket no. 624-3), at 4. Defendants

Rubashkin and Agriprocessors contend that "[t]he results from the juror questionnaire demonstrate it will be impracticable if not impossible to select a fair and impartial jury from the potential jury pool." *Id.*

The government argues that Defendants Rubashkin and Agriprocessors have failed to satisfy their burden to transfer venue. Defendant Beebe also resists the Motion.

### *B. Law*

"It is a fundamental tenet of due process that a defendant is entitled to have his guilt determined by a fair and impartial jury." *United States v. Green*, 983 F.2d 100, 102 (8th Cir. 1992). To this end, the Federal Rules of Criminal Procedure provide:

> Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

Fed. R. Crim. P. 21(a).

Defendant bears the burden to prove that he is entitled to a change in venue due to adverse pretrial publicity. *United States v. Delay*, 500 F.2d 1360, 1365 (8th Cir. 1974); *United States v. Holder*, 399 F. Supp. 220, 225 (D.S.D. 1975) (McManus, J., sitting by designation). "A pretrial venue change is called for only in those situations where the pretrial publicity in a community is so extensive and inflammatory as to raise a presumption that an impartial jury could not be seated there." *United States v. Bliss*, 735 F.2d 294, 298 (8th Cir. 1984). A defendant must show that "there exists in the district so great a prejudice against [him] that he cannot obtain a fair trial[.]" *United States v. Buttorff*, 572 F.2d 619, 627 (8th Cir. 1978).

Typically, the Eighth Circuit Court of Appeals "prefer[s] for the trial court to await voir dire before ruling on motions for a change of venue." *Green*, 983 F.2d at 102. Adopting such a "wait-and-see" approach is ordinarily appropriate because

3

> at that point the trial court has the information necessary to conduct the due process analysis called for by the Supreme Court in *Beck v. Washington*[, 369 U.S. 541, 557 (1962)], namely, whether the "pretrial publicity was so intensive and extensive or the examination of the entire panel revealed such prejudice that a court could not believe the answers of the jurors [regarding their impartiality] and would be compelled to find bias or preformed opinion as a matter of law."

*Id.* (quoting *Bliss*, 735 F.2d at 298)).

On appeal, the Eighth Circuit Court of Appeals engages in a two-tiered analysis for evaluating a defendant's request for change of venue based on adverse pretrial publicity. *United States v. Gamboa*, 439 F.3d 796, 815 (8th Cir. 2006). First, it determines "whether the pretrial publicity was so extensive and corrupting" that "unfairness of a constitutional magnitude" is presumed. *United States v. Nelson*, 347 F.3d 701, 707 (8th Cir. 2003) (citation omitted); *United States v. Allee*, 299 F.3d 996, 1000 (8th Cir. 2002). If and only if a presumption of prejudice is not warranted, the Eighth Circuit Court of Appeals then conducts a second analysis. *Allee*, 299 F.3d at 1000. At the second tier, the Eighth Circuit Court of Appeals evaluates the voir dire testimony of the trial jurors to determine if they "demonstrated such actual prejudice that it was an abuse of discretion to deny a timely change-of-venue motion." *Nelson*, 347 F.3d at 708 (citation omitted).

### C. Analysis

The parties agree that the court should evaluate the Motion under the first tier of the change-of-venue test. That is, the parties agree that the court must determine "whether the pretrial publicity was so extensive and corrupting" that "unfairness of a constitutional magnitude" is presumed with respect to Defendants Rubashkin and Agriprocessors. *Nelson*, 347 F.3d at 707.

Prior to the Hearing, the court independently reviewed each of the completed juror questionnaires. The court also independently considered the evidence and arguments that Defendants Rubashkin and Agriprocessors raised in support of the First Motion and the

4

Second Motion. The court finds that prejudice from pretrial publicity in this action is so extensive and corrupting that it may presume unfairness of a constitutional magnitude against Defendants Rubashkin and Agriprocessors. *Id.* In particular, the court notes that the completed juror questionnaires, when read as a whole and in the context of each potential juror's completed questionnaire, demonstrate that the prodigious amount of negative pretrial publicity has caused the vast majority of potential jurors to develop and maintain a pervasive, strong bias against Defendants Rubashkin and Agrprocessors. Based on the court's analysis of the juror questionnaires, this bias would directly impact the ability of nearly all of the potential jurors to set aside their biases and decide the case based only on the evidence presented at trial. As a result, the court finds that the pretrial publicity in the community is so extensive and inflammatory that it raises a presumption that an impartial jury could not be seated in the Northern District of Iowa in October of 2009. *Bliss*, 735 F.2d at 298. Accordingly, the court shall grant the Motion.

The court shall change venue of the instant action to the District of South Dakota, Southern Division, in Sioux Falls, South Dakota. The court finds that change of venue to this district is appropriate because there has been only minimal publicity surrounding Agriprocessors and the instant action in that district. The court also finds that the population in and around Sioux Falls is comparable to the population in and around Cedar Rapids, Iowa. Further, air travel to and from Sioux Falls is no more inconvenient than air travel to and from Cedar Rapids. The proximity of Sioux Falls to the Northern District's Sioux City courthouse (a distance of 90 miles) is also helpful to the court because it will facilitate the ability of the undersigned and court personnel to return to the Sioux City courthouse for other pending matters. Finally, the District of South Dakota has court facilities and a jury pool readily available for the time period at issue.[1]

---

[1] The court also notes that the burden and expense surrounding the transfer of in-
(continued…)

## IV. CONCLUSION

For the foregoing reasons, the Motion (docket no. 624) is **GRANTED**. The court hereby **CHANGES VENUE** of the trial in the instant action to the District of South Dakota, Southern Division, in Sioux Falls, South Dakota. The Clerk of Court is **DIRECTED** to take any steps necessary to effectuate change of venue of trial in this case to the District of South Dakota, Southern Division, in Sioux Falls, South Dakota. The court reminds counsel to refrain from speaking with the press about the instant matter, particularly with respect to publications located in and around the District of South Dakota.

**IT IS SO ORDERED.**

**DATED** this 1st day of September, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[1](…continued)
custody witnesses to Sioux Falls is not onerous; Sioux Falls is only 90 miles from the Northern District's Sioux City courthouse.