**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 08-CR-1324-LRR |
| vs. | **ORDER** |
| SHOLOM RUBASHKIN, | |
| Defendant. | |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . *2*

*III. RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . *4*

*IV.  ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *A.   Five-Prong Test* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *1.   The unavailability of the evidence* . . . . . . . . . . . . . . *8*
            *a.   Legal standard* . . . . . . . . . . . . . . . . . . . . *9*
            *b.   Analysis* . . . . . . . . . . . . . . . . . . . . . . . . *9*
        *2.   Defendant's diligence* . . . . . . . . . . . . . . . . . . . . . *12*
        *3.   Cumulative nature of the evidence* . . . . . . . . . . . . *12*
        *4.   Materiality of the evidence* . . . . . . . . . . . . . . . . . *12*
        *5.   Nature of the evidence* . . . . . . . . . . . . . . . . . . . *13*
        *6.   Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . *14*
    *B.   Integrity of the Trial* . . . . . . . . . . . . . . . . . . . . . . . . . *14*
    *C.   Merits of Defendant's Recusal Argument* . . . . . . . . . . . . . . *15*
        *1.   Timeliness* . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
        *2.   Merits of recusal claim* . . . . . . . . . . . . . . . . . . . *16*
    *D.   Referral to Another Judge and Discovery* . . . . . . . . . . . . . *20*

*V.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *20*

# *I. INTRODUCTION*

The matter before the court is Defendant Sholom Rubashkin's "Motion Under Rule 33(b)(1) for a New Trial" ("Motion") (docket no. 942).

# *II. RELEVANT PROCEDURAL HISTORY*

On July 16, 2009, a grand jury returned a 163-count Seventh Superseding Indictment (docket no. 544) against Defendant. Count 1 charged Defendant with Conspiracy to Harbor Undocumented Aliens for Profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i). Counts 2 through 70 charged Defendant with Harboring and Aiding and Abetting the Harboring of Undocumented Aliens for Profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(II) and 1324(a)(1)(B)(i). Count 71 charged Defendant with Conspiracy to Commit Document Fraud, in violation of 18 U.S.C. § 371. Count 72 charged Defendant with Aiding and Abetting Document Fraud, in violation of 18 U.S.C. §§ 1546(a) and 2. Counts 73 through 86 charged Defendant with Bank Fraud, in violation of 18 U.S.C. § 1344. Counts 87 through 110 charged Defendant with False Statements and Reports to a Bank, in violation of 18 U.S.C. § 1014. Counts 111 through 124 charged Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343. Counts 125 through 133 charged Defendant with Mail Fraud, in violation of 18 U.S.C. § 1341. Counts 134 through 143 charged Defendant with Money Laundering and Aiding and Abetting Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 2. Counts 144 through 163 charged Defendant with Willful Violation of an Order of the Secretary of Agriculture and Aiding and Abetting a Willful Violation of an Order of the Secretary of Agriculture, in violation of 7 U.S.C. § 195 and 18 U.S.C. § 2. The Indictment also contained a forfeiture allegation on Counts 1 through 70.

On June 25, 2009, the court granted Defendant's Motion for Separate Trial (docket no. 519). The court ordered separate trials on Counts 1 through 74 ("Immigration

Counts") and Counts 75 through 143 ("Financial Counts").[1] From October 13, 2009 to November 12, 2009, the court held a jury trial on the Financial Counts, which the court renumbered as Counts 1 through 91. The renumbered Counts are as follows: Counts 73 through 86 became Counts 1 through 14, Counts 87 through 110 became Counts 15 through 38, Counts 111 through 124 became Counts 39 through 52, Counts 125 through 133 became Counts 53 through 61, Counts 134 through 143 became Counts 62 through 71 and Counts 144 through 163 became Counts 72 through 91.[2]

On November 12, 2009, the jury returned guilty verdicts on Counts 1 through 71, 73 through 80, 84 through 89 and 91 (docket no. 736). The jury returned not guilty verdicts on Counts 72, 81, 82, 83 and 90.

On November 19, 2009, the court granted the government's motion to dismiss the Immigration Counts. *See* Order (docket no. 746). The allegations underlying the Immigration Counts dealt with the May 12, 2008 worksite enforcement action that resulted in the arrest of over 300 illegal immigrants (sometimes referred to herein as the "Waterloo cases").

On March 1, 2010, the court entered an Order (docket no. 854) denying Defendant's "Motion for Judgment of Acquittal" (docket no. 721) and Defendant's "Combined Motion for Judgment of Acquittal and Motion for New Trial" (docket no. 747).

From April 28, 2010 to April 30, 2010, the court held a sentencing hearing. The court took evidence and gave Defendant his right of allocution. The court took the sentencing issues under advisement. On June 21, 2010, the court filed a Sentencing

---

[1] Counts 144 through 163 were charged after the court granted Defendant's Motion for Separate Trial. These counts were tried with the Financial Counts.

[2] The remainder of the instant Order refers to the Financial Counts in their renumbered version.

Memorandum (docket no. 927), detailing the court's interpretation and computation of the advisory sentencing guidelines, revealing the sentence it intended to impose after considering all of the factors under 18 U.S.C. § 3553(a), discussing the evidence supporting its sentence and declining to vary from the advisory guideline range. On June 22, 2010, the sentencing hearing reconvened and the court formally imposed a guideline sentence. On July 2, 2010, Defendant filed a Notice of Appeal (docket no. 932).

On August 5, 2010, Defendant filed the Motion. On August 24, 2010, the government filed its Resistance (docket no. 950). On September 8, 2010, Defendant filed a Reply (docket no. 955). Defendant requests oral argument on the Motion. The court finds oral argument is unnecessary. The Motion is fully submitted and ready for decision.

### III. RELEVANT FACTUAL BACKGROUND

Beginning on May 12, 2008, Immigration and Customs Enforcement ("ICE") conducted a worksite enforcement action at the Agriprocessors, Inc. ("Agriprocessors") meat packing plant in Postville, Iowa. During the enforcement action, federal agents discovered evidence that Agriprocessors employed hundreds of illegal immigrants. Over 300 undocumented workers were arrested, charged and convicted of one or more immigration-related crimes and sentenced.[3]

ICE, along with numerous other entities, including the United States Attorney's Office ("USAO") for the Northern District of Iowa, began planning the enforcement action in October of 2007. In the fall of 2007,[4] the USAO advised the undersigned that the office

---

[3] Defendant was not arrested in the enforcement action on May 12, 2008. The United States Attorney charged him in a Complaint filed October 30, 2008. On November 12, 2008, a grand jury indicted him on immigration-related crimes. Defendant was charged with a variety of financial fraud crimes in several superseding indictments, the earliest of which was filed November 20, 2008.

[4] The court does not recall mention of a potential enforcement action prior to December of 2007, but it appears from reliable documentation that USAO made the
(continued…)

4

was considering a worksite enforcement action in the eastern part of the Northern District of Iowa and that law enforcement expected to arrest several hundred persons on immigration-related felony offenses. USAO inquired as to the undersigned's schedule, which was promptly provided.[5] The undersigned did not receive any details beyond that. At some later time, when it became clear that the government intended to go forward with the enforcement action, the undersigned contacted numerous district court judges in the Eighth Circuit and inquired whether they would be willing to come to Iowa and assist if the need arose. The undersigned also contacted the Chief Judge of the Eighth Circuit Court of Appeals to ask that specified out-of-district judges be designated to the Northern District of Iowa to assist. As the undersigned stated in a June 2008 article, "[t]he court definitely couldn't accommodate that number [of defendants] without planning." The Third Branch Article (docket no. 950-2) at 74.

The undersigned was never informed—through a powerpoint presentation or otherwise—who the targets of the prosecutions would be or even where the worksite enforcement action was to take place. The undersigned's planning was limited to ensuring that a sufficient number of judges, court-appointed attorneys and interpreters would be available and that the court would be able to function efficiently at an off-site location. The undersigned did not tour the Cattle Congress grounds in Waterloo, Iowa. However, court

---

[4](…continued)
undersigned aware of the potential worksite enforcement action as early as October of 2007.

[5] It is important to note that the United States District Court for the Northern District of Iowa has two court locations that are approximately 350 miles apart (Sioux City in the western part of the district and Cedar Rapids in the east). The undersigned is the only district court judge chambered in the eastern side of the district who handles criminal felony matters. Magistrate Judges do not have the authority under federal statute to accept a plea or sentence in a felony criminal matter. *See* 28 U.S.C. § 636. Thus, inquiries concerning the undersigned's availability from prosecutors and defense attorneys are routine and appropriate.

personnel toured the grounds and worked on the grounds of the Cattle Congress making preparations prior to the day of the enforcement action.

After the administrative arrest of nearly 400 people, court personnel, including the undersigned district court judge, Chief Magistrate Judge Paul Zoss and Magistrate Judge Jon S. Scoles arrived at the Cattle Congress grounds in Waterloo to begin the work of the court. Although the undersigned had obtained designations for several district judges to travel to the Northern District of Iowa to assist, initially the only district judge on the grounds was the undersigned. As it became clear that the number of arrestees would, in fact, be in the hundreds, District Court Judge Mark W. Bennett from the Northern District of Iowa and District Court Judge Ralph Erickson from the District of North Dakota traveled to Waterloo to assist.

As defense counsel concedes, no court could move off-site with its personnel, over thirty interpreters from outside the district, defense attorneys and technology without significant advance planning. Logically, the Chief Judge of the District and the only resident judge near Waterloo would have to be consulted. During and soon after the legal proceedings in Waterloo, numerous articles and letters were written concerning the process. For instance, an attorney who declined to represent defendants in Waterloo wrote a letter criticizing the court's involvement. An interpreter also wrote an article critical of the proceedings. A legal publication entitled "The Third Branch" featured an article discussing the court's preparations for the large number of defendants that came before it. Additionally, the United States House of Representatives Judiciary Subcommittee conducted hearings related to the enforcement action and the subsequent court proceedings.

These publications, among other documents, led a defendant in a related case to file a motion seeking the undersigned's recusal pursuant to 28 U.S.C. § 455(a), which states that a judge "shall disqualify [her]self in any proceeding in which [her] impartially might reasonably be questioned." *See United States v. Martin De La Rosa-Loera*, 08-CR-1313-

LRR, docket no. 30. Defendant Martin De La Rosa-Loera filed the Motion to Recuse on August 13, 2008, after his plea of guilty was accepted but prior to the court conducting his sentencing hearing. De La Rosa-Loera attached twenty-four exhibits to his Motion to Recuse, including: (1) articles from national and local newspapers; (2) press releases from interest groups, the government and Mr. Robert Phelps, the Clerk of Court for the Northern District of Iowa; (3) letters from a public interest group to the undersigned and from a local attorney to a Congresswoman; (4) criminal docket sheets; and (5) an interpreter's "personal account" of his involvement in the Waterloo cases. De La Rosa-Loera argued that the undersigned should recuse herself based on the court's pre-enforcement action planning. On September 29, 2008, the court denied the Motion to Recuse. *See* Order (docket no. 60 in 08-CR-1313-LRR). In the Order, the court discussed its pre-enforcement action planning, deemed it logistical in nature and stated that any and all preparation was conducted pursuant to her role as Chief Judge of the Northern District of Iowa. *Id.* at 6. Defendant's trial counsel concede that they were familiar with De La Rosa-Loera's Motion to Recuse and the court's Order denying it.

Pursuant to a Freedom of Information Act ("FOIA") request, Defendant has procured numerous ICE memoranda that contain information concerning the enforcement action planning. Defendant claims these memoranda contain "new evidence" proving that the undersigned had a statutory obligation under 28 U.S.C. § 455(a) to recuse herself. From that assertion, Defendant claims a new trial is required pursuant to Federal Rule of Criminal Procedure 33(b).

## IV. ANALYSIS

Defendant moves for a new trial under Federal Rule of Criminal Procedure 33(b)(1), which states "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). "The standard for a new trial on the basis of newly discovered evidence 'is rigorous because these

7

motions are disfavored.'" *United States v. Hollow Horn*, 523 F.3d 882, 889 (8th Cir. 2008) (quoting *United States v. Baker*, 479 F. 3d 574, 577 (8th Cir. 2007)). To prevail on the Motion, Defendant must prove that:

> (1) the evidence must in fact be newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Womack*, 191 F.3d 879, 886 (8th Cir. 1999). For the reasons set forth below, Defendant fails to prove at least four prongs of this test. However, Defendant also appears to argue that the Motion should not be subject to this test, because the "newly discovered evidence" relates to the "integrity of the trial" and not to "the substantive issues of guilt." Defendant's Brief in Support of the Motion ("Def. Brief") (docket no. 942-1), at 17 n.1. The court first addresses the Eighth Circuit Court of Appeal's traditional five-prong test and then proceeds to consider whether Defendant's purported "newly discovered evidence" compromises the "integrity of the trial."

### A. Five-Prong Test

As an initial matter, the court notes that it will consider the five prongs in relation to the issues at trial. In his papers, Defendant appears to argue that the five-prong test should be applied as if the court were ruling on a motion to recuse brought prior to trial. *See* Reply at 2-5. Nevertheless, the court will address the issue of recusal on the merits.

#### 1. *The unavailability of the evidence*

Defendant argues that the undersigned's failure to recuse herself from presiding over his trial warrants a new trial. He supports this claim with internal ICE memoranda, which he asserts constitute the "newly discovered evidence." The court's first inquiry is whether

8

these ICE memoranda can be considered "newly discovered evidence" for purposes of a Rule 33(b)(1) Motion.

### a. *Legal standard*

"Rule 33 allows a district court to grant a new trial if the defendant brings forward 'newly discovered *evidence*.'" *United States v. Lenz*, 577 F.3d 377, 381 (1st Cir. 2009) (quoting Fed. R. Crim P. 33(b)(1)) (emphasis in *Lenz*). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In *Lenz*, the First Circuit Court of Appeals held that "[w]hether or not a witness will testify truthfully if called to the stand is not 'evidence' that can be used as a basis to invoke Rule 33 of the Federal Rules of Criminal Procedure." *Lenz*, 577 F.3d at 381 (quoting *United States v. Turns*, 198 F.3d 584, 588 (6th Cir. 2000)).

The Sixth Circuit Court of Appeals has distinguished "newly discovered evidence" from "newly available evidence." *Turns*, 198 F.3d at 588. The Eighth Circuit Court of Appeals has made a similar distinction. *See United States v. Offutt*, 736 F.2d 1199, 1202 (8th Cir. 1984) (holding that "when a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a codefendant, the evidence is not newly discovered"); *see also United States v. Lofton*, 333 F.3d 874, 876 (8th Cir. 2003) (holding that a codefendant's willingness to testify to exculpatory evidence post-trial is not "newly discovered evidence" for Rule 33 purposes when the defendant did not subpoena the codefendant to testify at trial).

### b. *Analysis*

Drawing from the reasoning of the above cases and the Federal Rules of Evidence generally, the court holds that the ICE memoranda do not constitute "newly discovered evidence." First, the purported "evidence" is not evidence at all. Defendant fails to point to anything in the memoranda which would be admissible on any issue relating to the

Financial Crimes of which Defendant was convicted, tend to exculpate him or have any bearing on his guilt whatsoever. *See* Fed. R. Evid. 401 (defining relevant evidence). The jury convicted Defendant based on overwhelming evidence establishing the elements of the Financial Crimes charged.[6]

Second, the ICE memoranda on which Defendant bases the Motion can more accurately be characterized as "newly available" as opposed to "newly discovered." Defendant concedes that he was aware, well in advance, of trial that the undersigned met with representatives from USAO, the United States Marshals Service and ICE to make necessary arrangements prior to the enforcement action. Specifically, one of Defendant's attorneys admits that, prior to trial, he "familiarized himself with the Order issued by [the undersigned] on September 29, 2008, in *United States v. De La Rosa-Loera*, N.D. Iowa No. 08-CR-1313-LRR relating to Mr. De La Rosa-Loera's motion requesting [the undersigned] recuse herself." Affidavit of F. Montgomery Brown ("Brown Aff.") (docket no. 942-3) at 2. In his Motion to Recuse, De La Rosa-Loera made arguments similar to those Defendant now makes. De La Rosa-Loera requested that the undersigned recuse herself from sentencing him. He attached a number of exhibits to his Motion to Recuse, including various news articles discussing contacts between the undersigned and USAO, the record from the congressional hearings related to the enforcement action and press releases from USAO.

Defendant contends that the ICE memoranda contain information that was not available prior to their release. He claims that the ICE memoranda prove that the undersigned's actions prior to the enforcement action exceeded logistical preparation. Specifically, Defendant argues that the ICE memoranda contain new information indicating

---

[6] In the court's Order (docket no. 854) denying Defendant's Motion for a Judgment of Acquittal and Motion for New Trial, the court gave a detailed description of the evidence presented against Defendant and discussed at length the sufficiency of the evidence on every count of conviction.

that the undersigned expressed approval for the enforcement action and that the planning meetings were earlier in time and more frequent than he originally believed. If the ICE memoranda are given a fair reading, Defendant fails to show that any information made available to the undersigned by law enforcement was not directly linked to logistical preparations for the court.

Defendant fails to make any novel arguments based on the ICE memoranda that he could not have raised based on what was clearly available to him before trial. For instance, the exhibits attached to De La Rosa-Loera's Motion to Recuse plainly state the fact that law enforcement agencies through USAO contacted the undersigned months before the enforcement action. It is immaterial for purposes of this motion if the contact was made in October or December of 2007. Defendant's argument that the ICE memoranda detail evidence of the undersigned's personal "support" for the enforcement action are likewise without merit. Throughout the Motion, Defendant misstates and mischaracterizes the memoranda.[7] The undersigned did not pledge to "support the operation in any way possible." Def. Brief at 14. The very exhibits to which Defendant cites confirm this fact. Any reference to the undersigned's "support" of the operation clearly appears in the context of the court's duty to logistically prepare for the arrest of hundreds of persons.

Accordingly, the ICE memoranda constitute "newly available" information not "newly discovered evidence." They do not contain any evidence that tends to disprove or contradict the court's analysis in its Order denying De La Rosa-Loera's Motion to Recuse.

---

[7] Defendant's Reply Exhibits 6 and 7 are affidavits from legal ethics experts. The court notes that these experts draw upon the same mischaracterizations as Defendant to arrive at their opinions. For instance Mark Harrison's Affidavit (docket no. 957-6) states that "Judge Reade indicated full support for the initiative[.]" Def. Reply Ex. 6 at 3. Stephen Gillers's affidavit also states that "Chief Judge Reade is also quoted as having expressed her 'support' for the raid[.]" Def. Reply Ex. 7 at 4. Given these experts' proclivity to rely on defense counsel's mischaracterization of the facts, the court declines to credit their affidavits.

In other words, despite Defendant's best efforts to characterize the ICE Memoranda as revealing conduct by the undersigned that was purposefully concealed and therefore deceitful, they simply confirm all of the court's prior representations that the undersigned's pre-enforcement action involvement was logistical in nature. Defendant had the time and opportunity to file a motion to recuse prior to trial. For whatever reason, strategic or otherwise, Defendant opted not to seek the undersigned's recusal prior to trial. Rule 33(b)(1) is not designed to provide a defendant with another bite at the apple to test a new strategy in an effort to obtain a new trial with a different judge.

### 2. *Defendant's diligence*

The court assumes without deciding that Defendant was diligent in his attempts to discover the information at issue in the Motion, although the court notes that Defendant was on inquiry notice prior to December 9, 2008. At the December 9, 2008 status conference, the attorneys and the court discussed the filing of a recusal motion and selected January 30, 2009 as the deadline for filing such a motion. Transcript of Telephonic Hearing (docket no. 168) at 35.

### 3. *Cumulative nature of the evidence*

A defendant cannot satisfy his burden under Rule 33(b)(1) by presenting "newly discovered evidence" that is merely cumulative or impeaching. *Womack*, 191 F.3d at 886. The court finds that Defendant's newly available information is at best cumulative. As discussed above, Defendant had access to information that detailed the undersigned's pre-enforcement action involvement well in advance of trial. Any evidence discovered through Defendant's FOIA request is merely cumulative.

### 4. *Materiality of the evidence*

Defendant bears the burden of proving that the evidence at issue is "material." *Id*. Courts often interpret this prong in connection with the previous prong—whether the evidence is merely cumulative or impeaching. *See United States v. Maldonado-Rivera*, 489

F.3d 60, 66 (1st Cir. 2007) (stating that in order to receive a new trial under Rule 33 a defendant must show that "the evidence is material (as opposed to being merely cumulative or impeaching)"). As stated above, Defendant's "newly available" information is merely cumulative; therefore, it cannot also be material. Furthermore, the court finds that the "newly available" information has no bearing on any of the issues raised at Defendant's trial on the Financial Counts.

### 5. *Nature of the evidence*

To prevail on the Motion, Defendant must show that the proffered evidence is of "such a nature that, on a new trial, the newly discovered evidence would probably produce an acquittal." *Womack*, 191 F.3d at 886. "To make a determination under this standard, the district court cannot view the [new evidence] in a vacuum; it must weigh the testimony against all of the other evidence in the record, including the evidence already weighed and considered by the jury in the defendant's first trial." *United States v. Kelly*, 539 F.3d 172, 189 (3d Cir. 2008).

Viewing the trial record as a whole, the court fails to see how any of the information related to the undersigned's involvement in planning for the court's relocation to Waterloo to handle hundreds of arrests would lead to an acquittal were Defendant retried on the Financial Counts. The undersigned's actions in preparing to handle the arrest of hundreds of workers would have no relevance to the issues in the financial fraud case and would not even be admissible evidence. *See* Fed. R. Evid. 401. At trial, the government presented substantial evidence proving Defendant's guilt on all counts of conviction. Defendant fails to provide any evidence or argument relating to how the undersigned's involvement or the appearance of impropriety prejudiced him or otherwise affected his trial. To the contrary, Defendant prevailed on significant pretrial motions, including his "Motion to the Chief District Judge for Revocation or Modification of Detention Order" (docket no. 134), his "Second Renewed Motion for Change of Venue" (docket no. 624) and his "Amended

Motion to Sever Counts 1-74 and Forfeiture Allegation from Counts 75-142" (docket no. 497). The court finds that Defendant's proffered evidence would not lead to an acquittal in the event he were retried.

### 6. *Conclusion*

For the reasons stated above, the court finds that Defendant fails to prove the five *Womack* prongs required to prevail on the Motion. Accordingly, the court shall deny the Motion for a New Trial brought under Rule 33(b)(1).

### *B. Integrity of the Trial*

Defendant appears to argue that the Eighth Circuit Court of Appeals's five-prong test is inapplicable in the instant case. He states that "[t]he newly discovered evidence may bear upon 'the substantive issue of guilt,' *or* 'upon the integrity of the earlier trial.'" Def. Brief at 17 n.1 (emphasis in the original). The cases Defendant cites in support of this proposition are readily distinguishable from the instant case.

In *Holmes v. United States*, a deputy United States Marshal told a member of the jury that one of the defendants in the case was currently serving a six-year sentence. 284 F.2d 716, 718 (4th Cir. 1960). The Fourth Circuit Court of Appeals held that a defendant may prevail on Rule 33(b)(1) motion if the evidence "tends strongly to establish a defendant's innocence or shows the jury to have been subjected to improper influence[.]" *Id*. at 719. In the latter scenario, the Fourth Circuit Court of Appeals held that "a new trial must be granted unless it clearly appears that the subject matter of the communication was harmless and could not have affected the verdict." *Id*. at 718. Here, Defendant fails to point to any evidence suggesting that the undersigned improperly influenced the jury's verdict. Even accepting Defendant's allegations as true, the undersigned presided over the trial related to the Financial Counts. Defendant was not tried on the Immigration Counts. Law enforcement uncovered evidence of Defendant's financial crimes well after the enforcement

action.  Again, the court fails to see how Defendant's "newly available" information "could [] have affected the verdict" as *Holmes* requires.  *Id*.

Aside from *Holmes* and *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), Defendant's cited cases simply stand for the proposition that a court can consider a motion for a new trial based on evidence that the presiding judge should have recused him or herself.  *See United States v. Elso*, 364 F. App'x. 595, 598 (11th Cir. 2010) (considering a motion for new trial based on recusal and holding that the defendant "failed to establish that he lacked knowledge of the evidence underlying his claim of judicial bias at the time of trial or that recusal was warranted"); *United States v. Venable*, 233 F. App'x. 313, 316 (4th Cir. 2007) (considering a motion for new trial based on recusal and holding that the district judge was not required to recuse himself); *United States v. Conforte*, 624 F.2d 869, 878-83 (9th Cir. 1980) (considering a motion for new trial based on newly discovered evidence that the district judge should have recused himself and rejecting it based on the defendant's lack of diligence and on the merits).  The court is undertaking precisely this analysis in the instant Order.  The court declines to credit Defendant's arguments related to *Liljeberg*.  *Liljeberg* is a civil case involving the application of Rule 60(b) of the Federal Rules of Civil Procedure.  The instant case involves Rule 33 of the Federal Rules of Criminal Procedure.  Again, motions for new trial under Rule 33 are "disfavored."  *Baker*, 479 F. 3d at 577.

### C. Merits of Defendant's Recusal Argument

As stated above, the court finds that Defendant has not met his burden under Federal Rule of Criminal Procedure 33(b)(1).  Nevertheless, the court will address Defendant's arguments related to recusal under 28 U.S.C. § 455(a).

   *1.*   *Timeliness*

Although § 455 does not contain an explicit timeliness requirement, the Eighth Circuit Court of Appeals has held that "a claim for judicial recusal under section 455 'will not be considered unless timely made.'"  *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664

(8th Cir. 2003) (quoting *United States v. Bauer*, 19 F.3d 409, 414 8th Cir. 1994)). "Timeliness requires a party to raise a claim 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.'" *Id.* (quoting *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987)). As outlined above, Defendant knew long before trial that USAO and law enforcement agencies contacted the undersigned prior to the enforcement action. He chose not to file a motion to recuse. Although he could have filed such a motion for the purpose of preserving the issue, he elected not to. Accordingly, the court finds that Defendant waived his request for recusal by failing to seek such relief in a timely manner.[8]

### 2. *Merits of recusal claim*

Even if Defendant timely raised his recusal arguments, the court finds that they are baseless. In relevant part, 28 U.S.C. § 455(a), the recusal statute, states:

> Any . . . judge . . . of the United States shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned.

---

[8] Defendant states "[t]he Second, Fifth, Tenth and Eleventh Circuits have vacated convictions [when the trial judge should have recused him or herself]." Def. Brief at 7. Defendant's cited cases are unpersuasive. First, none of these cases analyzed a recusal motion pursuant to Rule 33(b)(1)'s framework. Second, timeliness or waiver was not an issue in three of the four cited cases. The defendants in three of the cited cases timely filed recusal motions "at the earliest possible moment after obtaining knowledge of the facts demonstrating the basis for such a claim." *Apple*, 829 F.2d at 333. In *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007), the defendant timely raised his recusal claim prior to trial. In *United States v. Bremers*, 195 F.3d 221, 224 (5th Cir. 1999), timeliness was not at issue as the defendant brought his recusal motion pre-trial upon learning the basis for recusal. In *United States v. Cooley*, 1 F.3d 985, 990 (10th Cir. 1993), the defendant moved for recusal eight weeks prior to trial. Last, in *United States v. Kelly*, 888 F.2d 732, 745-46 (11th Cir. 1989), the Eleventh Circuit Court of Appeals held that the district court inappropriately delegated the recusal issue to the parties and improperly considered jeopardy in his recusal analysis—two circumstances obviously not alleged here.

28 U.S.C. § 455(a). In other words, "[a] judge must recuse if '[her] impartiality might reasonably be questioned' because of bias or prejudice." *United States v. Burnette*, 518 F.3d 942, 945 (8th Cir. 2008).[9]

"Section 455(a) provides an objective standard of reasonableness." *United States v. Martinez*, 446 F.3d 878, 883 (8th Cir. 2006). "The issue is 'whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case.'" *Id.* (quoting *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) (en banc)). "Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise." *Id.* (citing *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006)). "'[A] judge considering whether to disqualify [herself] must ignore rumors, innuendoes, and erroneous information published as fact . . . .'" *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986) (per curiam) (quoting *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981)). When deciding whether to grant a recusal motion, the court must "carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning [the court's] impartiality might be seeking to avoid the adverse consequences of [the judge] presiding over their case." *In re Kansas Public Employees Retirement System*, 85 F.3d 1353, 1358 (8th Cir. 1996) (quoting *in re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988)). A judge's duty not to recuse herself when unwarranted is just as important as a judge's duty to recuse when required. *See Walker v. Bishop*, 408 F.2d 1378, 1382 (8th Cir. 1969).

Based on the facts and ignoring all rumor and innuendo, the court finds that recusal was not required in this case. An average person on the street, privy to all the facts of this case, would presume that the Chief Judge of a district court must perform certain duties to ensure that court proceedings are efficient and afford all constitutional guarantees to

---

[9] It should be noted that Defendant makes no claim of actual bias or prejudice under 28 U.S.C. § 455(b).

defendants. That is precisely what the undersigned did in relation to the enforcement action.[10]

The temporary relocation of judges and other court personnel to other parts of the Northern District of Iowa was consistent with the court's past practice. For example, in April of 1996, the Honorable Michael J. Melloy, then-United States District Court Judge for the Northern District of Iowa, and the Honorable John A. Jarvey, then-United States Magistrate Judge for the Northern District of Iowa, presided over dozens of criminal immigration cases at the National Guard Armory in Charles City, Iowa.

Consistent with past efforts, attorneys and interpreters were provided checklists and pattern proceedings transcripts before the Waterloo court proceedings began. A reasonable, disinterested observer, knowing all the facts, would understand that these checklists and pattern proceedings transcripts were not a sinister effort on the part of the federal judges involved to "script" the Waterloo proceedings. The Magistrate Judges designed the checklists and pattern proceedings transcripts for the benefit of *all* participants to ensure that all laws were followed and all pertinent topics covered.[11] Checklists are routinely made available to all counsel in other criminal cases and have been posted on the court's website. They merely give life to the requirements of Federal Rule of Criminal Procedure 11. The pattern proceedings transcripts were deviated from, revised and improved throughout the Waterloo cases. They were revised continually in an attempt to find language that could be

---

[10] The involvement of the undersigned, as well as the other judges in the Waterloo cases, was no different than other multiple-defendant cases. Judges routinely approve search warrants, decide where and when hearings will be held, conduct initial appearances, preside over arraignments and decide whether or not to approve plea agreements reached by the United States Attorney, the defendant and the defense attorney.

[11] Shortly before May 12, 2008, Judge Scoles was made aware of the charges that could be filed by virtue of reviewing and signing hundreds of complaints and search warrants.

18

interpreted more easily and that would make concepts as clear as possible to non-English speaking persons.

Any other statements or innuendo published in the media or elsewhere simply do not represent the facts. The pertinent facts are these: (1) the undersigned was never informed prior to the commencement of the enforcement action that Defendant was or could be a target of the enforcement action; (2) the undersigned was not told prior to May 12, 2008 where the enforcement action would occur; (3) the undersigned did not express personal support for or policy agreement with the enforcement action; (4) any knowledge that the court had prior to the enforcement action was specifically tailored to ensuring that the court could gather the necessary resources to guarantee arrestees their rights; (5) the undersigned did not visit the site at the Cattle Congress before the day of the commencement of the enforcement action; (6) providing the dates when the court is unavailable is common and necessary because the undersigned is the only district judge in the eastern part of the district that handles felony criminal matters; (7) the court did not perform any functions that fall within the executive branch (i.e. who to charge, what to charge and whether a plea agreement offer should be made and the terms of it); and (8) the undersigned did faithfully and impartially discharge and perform all of the duties that are incumbent upon her as the Chief Judge of the Northern District of Iowa.

If the undersigned were to recuse herself in the instant case it would provide an incentive to defendants to advance rumors and foster speculation in the media in an effort to judge shop. The court declines to do so.

Furthermore, an average person on the street would not question the undersigned's impartiality in this case because the facts relevant to Defendant's financial fraud trial were sufficiently attenuated from the cases arising out of the immigration enforcement action. Accordingly, the court finds that Defendant's arguments related to recusal are without merit.

### *D. Referral to Another Judge and Discovery*

There is no Eighth Circuit Court of Appeals precedent requiring the undersigned to refer the Motion to another judicial officer or to permit discovery. Further, there is nothing to discover that would support the Motion. The Motion is totally devoid of merit and further proceedings with reference to it would be an useless waste of time. Accordingly, the court shall not refer the Motion or authorize discovery.

### V. CONCLUSION

In light of the foregoing, the Motion (docket no. 942) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 27th day of October, 2010.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA